BAILEY JOHNSON and wife *vs.* A. C. TUCKER and others.

April Term, 1875.

PRACTICE—EXCEPTIONS TO AN ANSWER FOR INSUFFICIENCY AND IMPERTINENCE.—By the English practice, scandal and impertinence in an answer must be disposed of before its sufficiency can be considered; but, in this state, exceptions for insufficiency and impertinence may be filed and acted on together.

IMPERTINENCE—SUMMARY OF DEDUCTIONS, REASONS, AND AUTHORITIES.—It is impertinence in an answer, after stating the facts in response and relied on, to give a summary of several pages of supposed conclusions and errors in previous proceedings, with the reasons and authorities relied on; and a conclusion couched in reproachful language may also be scandalous.

SAME—PETITION FOR REHEARING.—Where the bill is filed to subject property to the satisfaction of a judgment of the supreme court, it is impertinence in the answer to embody a petition for a rehearing in the supreme court which that court refused to receive.

PRACTICE AS TO IMPERTINENT MATTER.—In this state, where an interlocutory order can only be revised upon appeal after a decree upon the merits, the better practice is to designate the matter declared impertinent, without actually striking it out, unless it be also plainly scandalous.

*Jno. P. Helms*, for complainant.
*M. M. Brien, jr.*, for defendant.

THE CHANCELLOR:—The bill in this case is filed by the complainants, as judgment creditors of A. C. Tucker, to

subject to the satisfaction of their judgment, after exhausting their legal remedies, certain realty in which the defendant Tucker is alleged to have an equitable interest. The complainants' judgment was rendered by the supreme court of the state against the defendant Tucker, as surety for one H. C. Jenkins upon an appeal bond, executed in order to enable the said Jenkins to prosecute an appeal from a decree of this court rendered against him as the purchaser of land, upon a bill filed by these complainants against him to enforce a vendor's lien. All of the purchase notes given for the land were not due at the rendition of the decree in this court, and the decree was rendered for the amount then due and unpaid, and a sale of the land ordered in satisfaction of the vendor's lien. The decree was affirmed by the supreme court, and the land sold, and afterwards, when it had been ascertained that the proceeds of sale failed to satisfy the whole of the purchase notes, the supreme court, upon motion and the equities reserved, rendered a judgment against the defendant Tucker upon the appeal bond for the purchase money remaining unpaid, and which only fell due after the appeal from the decree of this court. The present bill sets out the facts with some particularity, and the answer of the defendant Tucker goes into a statement of the facts in more detail. The answer then undertakes to show that the decree of the supreme court against the defendant was erroneous and unjust, and to give reasons and cite authorities upon the points relied on. The answer further states that defendants' counsel prepared a petition for rehearing, and offered to present the same to the supreme court in open court, but the court declined to hear it, and a copy of this petition is made an exhibit to the answer.

The complainants filed exceptions to the sufficiency of the answer, and at the same time filed exceptions on the score of scandal and impertinence. Both sets of exceptions were acted upon by the master, who overruled the exceptions for scandal and impertinence, and the complainants appealed from this ruling to the Chancellor.

The appeal was brought before me at chambers, under § 4404 of the Code, which expressly authorizes the Chancellor to hear appeals from the rulings of the master, on exceptions to answers, " in vacation," a mode of expression in most instances equivalent to saying, " at chambers." For, under the practice of the court in this state, whatever may be done by the judge at chambers may be done whether the court is in session or not, and the authority to act in vacation necessarily carries with it the right to act out of court—that is, at chambers.

By the revised rules .of chancery practice adopted by the Chancellors, and enacted into a law by the general assembly, rule 1, § 4, it is provided : " If exceptions be filed to an answer for sufficiency, or for scandal and impertinence, the clerk and master shall examine and report upon them with all convenient speed ; and if either party be dissatisfied with his report he may appeal to the Chancellor *in court.*" By a subsection of §' 5 of the same rule it is further provided : " Upon appeal so taken the Chancellor shall act immediately, or so soon as convenient." It is obvious that the language of this rule is equivocal, and raises a doubt whether the appeal can be heard in vacation, or only in open court.

My impression is that the wording of the. rule does not deprive the Chancellor of the power, so repeatedly given and recognized by the Code (see §§ 4410, 4416, 4451, 4404), of regulating and controlling the master's proceedings, of hearing and determining motions, and of making interlocutory orders to prepare causes for hearing, in vacation, and, especially, of the power of acting on appeals from the master's rulings upon exceptions to answers, so positively conferred by § 4404. But the doubt has been sufficient to induce me to hold up this case for a few days, so as to hear the appeal " in court," and to call the attention of the bar to the language of the rule, with a view to a deliberate consideration of its import.

The complainant filed exceptions to the sufficiency of the

answer, and for scandal and impertinence, at the same time. The English rule of chancery practice is that scandal and impertinence in an answer must be disposed of before its sufficiency can be considered ; and that, after a reference for insufficiency, an answer cannot be referred for impertinence, although it may be for scandal. Story's Eq. Pl. § 867 ; Coop. Eq. Pl. 321. The reason is that the result of the reference for impertinence should be known before the reference for insufficiency, because the answer may be sufficient by reason of the very matter which is impertinent. *Pellew* v. ———, 6 Ves. 456. Impertinence is an injury to the party which he may waive, and which he does waive if he fail to object in due time, and in the mode prescribed by law. *Anonymous*, 5 Ves. 656. But scandal is an offence upon the court, which, for its own honor, it should correct at whatever time it is brought to its notice. 2 Ves. 24, 631; *Campbell* v. *Taul*, 3 Yerg. 563. And Lord Nottingham, in *Trevor* v. *Lesquire*, Finch, 72, for the offence of scandal, ordered an answer to be taken " off the file and burnt."

In this state, however, as in New York, exceptions to the answer for impertinence and for insufficiency may be made at the same time, and acted upon together (Code, § 4401), which seems to contemplate and include all exceptions the party is entitled to file. Revised Rules, rule 1 ; *Woods* v. *Morrell*, 1 Johns. Ch. 103.

By the Code, § 4315, an answer in chancery is required to " contain a clear and orderly statement of the facts on which the defence is founded, without prolixity or repetition, and with a prayer of dismissal or counter relief, according to the nature of the case." By § 4316 it is made the duty of the court to discountenance prolixity and unnecessary allegations in all chancery pleadings. These are mere repetitions of rules of pleading which have prevailed in chancery from the earliest times. Beames' Orders in Chancery 25, 165, 167. Impertinence is, says Judge Story, " any matter not pertinent or relevant to the points which,

in the particular stage of the proceedings in which the cause then is, can properly come before the court for decision." *Wood* v. *Mann*, 1 Sumn. 578, 588. "Facts," says Chancellor Kent, " not material to the decision are impertinent, and if reproachful they are scandalous ; and perhaps the best test by which to ascertain whether the matter be impertinent is, to try whether the subject of the allegation could be put in issue, and would be matter proper to be given in evidence between the parties." *Woods* v. *Morrell*, 1 Johns. Ch. 103, 106.    And Chancellor Walworth has even more clearly and fully defined what may be impertinent, by showing what is not so.    " If the matter of an answer is relevant—that is, if it can have any influence whatever in the decision of the suit, either as to the subject-matter of the controversy, the particular relief to be given, or as to the costs—it is not impertinent." *Van Rensellaer* v. *Brice*, 4 Paige, 174.    The court, however, to quote Chancellor Kent again, will always feel disposed to give the answer a liberal consideration on this point of matter irrelevant, and to consider whether it can have any real and proper influence upon the suit, having regard to the nature of it as made by the bill.    1 Johns. Ch. 106.    A still stronger reason for liberal consideration is that the striking out of matter from the record may be productive of greater evil than to leave it and set it right in the adjustment of the costs at the hearing.    *Davis* v. *Cripps*, 2 Y. & C. C. C. 443.

The bill seeks to reach property of the defendant, through the aid of this court, to satisfy a judgment rendered by the supreme court.    The bill states the proceedings preliminary to the judgment, and the answer details the facts more at length.    The answer then, in about two pages of manuscript, undertakes to sum up, in short paragraphs, the supposed errors in the proceedings, which, the defendant argues, renders the judgment erroneous and unjust, and cites the authorities relied on to support the points made.    It is obvious that such a summary in the answer is unnecessary to the defendant's rights, which depend upon the facts pre-

viously recited, not upon the deductions the defendant chooses to draw, nor the reasons he may give or the authorities he may cite in support of those deductions. An answer should contain " a clear and orderly statement of the facts on which the defence is founded," not deductions or reasons, and, still less, citations of law. It is an elementary principle of pleading that it is impertinent to state the law, for the court is bound to take judicial notice of it without any averment. Story's Eq. Pl. § 266, note 1. Strictly speaking, every statement in pleading, beyond the plain facts on which the defence rests, is impertinent. *Woods* v. v. *Woods*, 10 Sim. 215. Though, of course, frivolous exceptions, even if technically well taken, are discountenanced. *Del Pont* v. *De Tastet*, 1 Turn. & R. 486 ; *Baggott* v. *Henry*, 1 Edw. Ch. 7 ; *Gleaves* v. *Morrow*, 2 Tenn. Ch. 592. Obviously, then, the complainants' first exception, which goes to the two pages of the answer in question, is well taken, not because these pages state facts which are impertinent, but because they state no facts whatever—only conclusions, reasons, and law.

The second exception is to a single paragraph which states a conclusion, and asks the court, upon certain supposed general principles, to declare a result in relief of the defendant " from a most unjust, *a la* Shylock, proceeding." This exception is well taken for the reason just given, and the clause is, perhaps, also scandalous because " reproachful."

The third exception is to a particular part of the answer averring the preparation by the defendants of a petition for rehearing, and an offer to present it to the supreme court, and the refusal of that court to hear it. The answer, in this instance, does state a fact on which the defendant undertakes to rest his defence, and it therefore becomes material to consider whether the fact averred " can have any influence whatever in the decision of the suit, either as to the subject-matter of controversy, the particular relief to be given, or as to the costs." Rehearings in equity, after a decree, are not a matter of right, but rest in

the sound discretion of the court. *Mills* v. *Banks*, 3 P. W. 8; *Travis* v. *Waters*, 1 Johns. Ch. 48; *Daniel* v. *Mitchell*, 1 Story, 198. Unless it may be in cases specially provided for by statute, or rules of court. *Sand* v. *Wickham*, 1 Paige, 256; *Harrison* v. *Hull*, Hopk. Ch. 112. And even where there is a rule of a court of last resort, its relief, upon an application under the rule, cannot be brought in question in an inferior court. It is obvious, therefore, that the preparation of, and offer to present, the petition for a rehearing "is not a matter which can be filed in controversy in the present suit, or admitted to proof." *Langdon* v. *Goddard*, 3 Story, 13, 23. This exception was also well taken.

The fourth exception was to the petition for rehearing being made a part of the answer as an exhibit, and should have been sustained, not merely upon the ground just stated, but because the petition itself is only a legal argument.

It is argued for the complainants that the exceptions should be sustained because the answer, in the parts excepted to, undertakes to impeach collaterally a judgment of the supreme court. But the complainant, by the frame of his bill, has opened the door to a full statement of the proceedings which led to the judgment, and the defendant has detailed the facts without any exception being taken thereto. What effect this would have upon the rights of the parties, it would be improper to determine except upon final hearing.

The English practice, upon the finding of impertinence in a pleading, seems to be to order it to be expunged, and leave it to the objecting party to see that the order is actually executed. *Davis* v. *Cripps*, 2 Y. & C. C. C. 443; *Raphael* v. *Birdwood*, 1 Swans. 232. In this state, where a general appeal in chancery carries up the entire record for revision, and no immediate appeal lies from an interlocutory order, the better practice would seem to be to make the order, considering it as executed until reversed, or, at most,

expunge by drawing lines around the impertinent matter,. or otherwise designating it, without, in fact, striking it out. It is true the rights of the parties might be equally pro-tected by a bill of exceptions, and certainly, in the case of' clear scandal, the court would direct the actual expunging, leaving the opposing party to his remedy by bill of excep-tions, if he chooses to resort to it.

The rulings of the master will be reversed, the exceptions. sustained, and the matters excepted to ordered to be struck out as impertinent.