(30 App. Div. 508.)

JOHN D. PARK & SONS CO. v. NATIONAL WHOLESALE DRUGGISTS' ASS'N et al.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

1. PLEADING—IRRELEVANT ALLEGATION.
  An irrelevant allegation in a pleading is one which has no substantial relation to the controversy between the parties to the suit, and which cannot affect the decision of the court because it has no bearing upon the subject-matter of the controversy.

2. SAME—REDUNDANCY.
  Redundancy may consist of needless repetition of material allegations, as well as an insertion of irrelevant matter.

3. SAME—EQUITABLE RELIEF.
  Where a complaint seeks equitable relief, greater latitude must necessarily be allowed in determining whether its allegations are properly concise.

4. CONSPIRACY—PLEADING.
  In an action based upon the allegation of a conspiracy to boycott the plaintiff's business, it is not necessarily improper pleading to allege a claim made by a defendant as to his right to do a certain act which the plaintiff insists is injurious, and his reason for doing it.

5. EQUITY—PLEADING.
  Where, in an action for equitable relief, it is necessary for the plaintiff to show the relations of the various acts to each other, and to the end sought by them, an allegation of a conclusion of law is not necessarily injurious to the defendant.

6. PLEADING—STATEMENT OF EVIDENCE.
  The propriety in a given case of alleging facts as they actually exist, and not simply according to their legal effect, does not require or permit a statement in the complaint of the evidence relied upon to prove the facts, unless the evidence constitutes the facts themselves.

7. INJUNCTION—PLEADING—COMPLAINT.

In an action to restrain defendants from boycotting the plaintiff, and also from taking various steps towards a' boycott, it is not only proper, but necessary, for the complaint to allege each step taken by the defendants in establishing the boycott, the existence of their association for that purpose, and their relation to the association, and so much of its organization as may enable the court to understand the manner of carrying on. its business and the object of its creation, and similar matters.

Appeal from special term, New York county.

Action by John D. Park & Sons Company against the National Wholesale Druggists' Association and others. From an order striking out parts of the complaint as irrelevant and redundant, plaintiff appeals. Modified.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and IN-GRAHAM, JJ.

Henry T. Fay, for appellant.
Henry Galbraith Ward and E. Spink, for respondents.

RUMSEY, J. The plaintiff is a corporation engaged in the manufacture of proprietary medicines which it sells to retailers, and is also a wholesale dealer in other medicines than those which it manufactures. The defendant the National Wholesale Druggists' Association is an unincorporated association, composed of the other defendants in this case and many other persons residing and doing business in different parts of the United States, all of whom are either wholesale druggists who own and manufacture certain proprietary goods, proprietors of proprietary goods who manufacture their own articles, or manufacturers of chemical or pharmaceutical preparations who are not interested in the proprietary goods at all. The plaintiff complains that these people have entered into an illegal conspiracy against it for the purpose of enforcing a boycott upon it, and thereby preventing it from disposing of its own goods, and from buying other proprietary goods of the dealers in them, or of selling such goods to retail dealers with whom it was accustomed to trade. The defendants are very numerous, and are scattered all over the United States of America, although many, if not most of them, have offices or places of business in the city of New York.. The complaint is very voluminous, containing over 401 separate paragraphs, and comprising, with the exhibits, 291 pages of the printed case. The motion was made at the special term to strike out portions of the complaint as irrelevant and redundant; and, this motion having been granted, the plaintiff now appeals from that order.

Section 545 of the Code of Civil Procedure provides that irrelevant or redundant matter contained in the pleading may be stricken out on the motion of the person aggrieved thereby. This power is not a new one given by the Code, but one which the courts have always recognized as existing, and which they have not been slow to exercise in a proper case. Ordinarily, however, a person should be left free to frame his own pleadings so far as the rules of good pleading will permit; and matter which is claimed to be irrelevant or redundant should be stricken out only when the moving party is actually aggrieved by it. Neither should that power be exercised in.

.such a way as to make the pleading, which otherwise would be good, defective upon demurrer; and, in every case where the court is called upon to examine the pleading for the purpose of striking out portions of it which are said to be irrelevant or redundant, the irrelevancy must be clear, and the redundancy unquestioned, before the portions complained of will be eliminated from the complaint. An irrelevant allegation is one which has no substantial relation to the controversy between the parties to the suit, and which cannot affect the decision of the court because it has no bearing upon the subject-matter of the controversy. Goodman v. Robb, 41 Hun, 605; Cahill v. Palmer, 17 Abb. Prac. 196; Van Rensselaer v. Brice, 4 Paige, 174. Irrelevant matter is redundant, but redundant matter is not necessarily irrelevant. Needless repetition of material allegations constitutes redundancy as well as an insertion of irrelevant matter. Bowman v. Sheldon, 5 Sandf. 657. The rights of the parties upon such a motion must be interpreted by these rules. The Code prescribes that the complaint must contain a plain and concise statement of the facts constituting each cause of action, without unnecessary repetition. Section 481. While the Code prescribes but one form of action by means of which every remedy must be sought, and does not recognize any distinction between actions for equitable relief and those in which damages or a money judgment only are sought, yet, in framing a complaint, there necessarily is a grave distinction between the two classes of actions. In the one class, where damages only are sought for a breach of contract or for tort, the rules require only a statement of the relation of the parties, the ultimate facts showing the right, and showing the breach of the right, such allegations as may be necessary to show a right to enhanced or other damages which do not necessarily flow from the act complained of, and a demand of relief to which the party considers himself to be entitled. Ordinarily, such a complaint may well be made plain and concise; but, when equitable relief is sought, there must be, from the necessity of the case, greater latitude in the allegations of the complaint. The nature of the relief itself frequently requires, not only that the ultimate facts from which the right to relief arises should be stated, but that facts which are somewhat collateral should be laid before the court, that the precise relief required to give to the party what he is entitled to, and the way in which that relief shall be granted, may be understood. For that reason, in actions of that nature, greater latitude and liberality are allowed in the preparation of pleading than in other actions; and the power to strike out matter which is claimed to be irrelevant should be used with reluctance and caution. Town of Dunkirk v. Lake Shore & M. S. Ry. Co., 75 Hun, 366, 27 N. Y. S. 105. These rules must be applied in the examination of this complaint and the determination of this appeal.

As was said, the action was brought to restrain the defendants from enforcing a boycott which they had endeavored to put upon the business of the plaintiff. It appears from the complaint that the firm of John D. Park & Sons, of Cincinnati, Ohio, was engaged in the same business as the plaintiff, a corporation organized under

the laws of Kentucky, and the successor of that firm. The plaintiff corporation was organized in 1891, but the firm of John D. Park & Sons had been in existence for many years before that time. The story told by the complaint is that before 1876 each dealer and manufacturer of proprietary articles had disposed of his goods in his own way, putting his own price upon them, giving to customers such rebate as he saw fit, paying such commissions for sales as seemed good to him, and giving such terms as to the payment of freight and express and cartage as seemed necessary to him to secure the largest amount of custom. In 1876, however, a scheme was devised by certain of the wholesale dealers in this kind of goods, by which the manner of dealing, the rebate to be given, the commission to be paid, and the allowance of freight and expressage and cartage, should be made uniform for all dealers, and efforts were made to bring all dealers in that kind of goods into the association, and to induce them to agree to sell in the same manner and upon the same terms to all customers. This effort was continued during many years, and finally, as it would seem from the complaint, nearly all the wholesale dealers and manufacturers in these goods came into the association, and agreed to abide by its rules, except only the firm of John D. Park & Sons. The National Wholesale Druggists' Association was the originator and the prime mover in these efforts, which were controlled by a committee of that association, known as the "committee on proprietary goods." The scheme was originated while the firm of John D. Park & Sons was in existence. It was sought to bring the dealers in this class of goods into this scheme, not only by suggestion and advice and entreaty, but, if those were not sufficient, by putting pressure upon them, to the end that they could not carry on their business profitably unless they belonged to this association and complied with its rules. This pressure consisted very largely in procuring the members of the association and those under its control to agree among themselves that they would not sell to the persons who refused to comply with the rules, that they would not buy from them, nor sell to any other person who would not agree not to sell to those persons; the effort being to make it impossible for the dealers not complying with the rules to procure goods with which to carry on their business. When the plaintiff corporation was organized, in 1891, and took over the business of the firm of John D. Park & Sons, this scheme was in full existence and operation. The rules which had been made to carry it out by the National Wholesale Druggists' Association, and by the committee on proprietary goods, at various times from 1876 down to 1891, were still operative, and they were brought to bear at once upon the new corporation as they had been brought to bear upon its predecessor, the firm of John D. Park & Sons. Those rules and efforts not being entirely successful to bring the plaintiff into the association, or to prevent it from obtaining goods, and thus carrying on its business, new rules were established, and new efforts were made, from 1891 until the time of the commencement of this action, having the same end in view; and the result was, as alleged in the complaint, that the business of the plaintiff was very seriously

crippled, and it was made very difficult, if not practically impossible, for it to dispose of its goods or to obtain goods of other wholesale dealers with which it could supply its own customers with whom it had been in the habit of trading.

The action is brought, not only to restrain the defendants from boycotting the plaintiff in its business, but to restrain them from carrying into effect the various rules and regulations which they have adopted from time to time, having in view the putting of illegal restrictions upon the dealing in this sort of business for the purpose of establishing a complete boycott upon the plaintiff. Bearing in mind this object of the action, we will examine shortly the allegations necessary to be inserted in the complaint to put the court in possession of the facts which will enable it to understand the situation of the parties, the rules which have been made to enforce this boycott, the effect which has been produced from time to time by the application of these rules upon the persons to whom they have been addressed, and the effect upon the plaintiff's business which the existence and enforcement of these rules have caused. It was necessary to allege, of course, the existence of the National Wholesale Druggists' Association, the relation which the other defendants bore to it, and so much of its organization as would enable the court to understand the manner in which its business was carried on, and the object for which it was created. To do that so that it might be understood, it was at least proper to give the facts showing the manner in which the business of the parties had been carried on before the establishment of this association, that the court might see the effect of the various rules which were made from time to time regarding the manner of transacting business. The object of the action being to restrain the taking of these various steps towards the boycott, as well as the boycott itself, it was not only proper, but necessary, to set out each step that was taken by the association, by way of establishing this boycott, because the relief asked is not only to restrain the defendants from boycotting this plaintiff, but to restrain them from carrying into effect the various rules which they have established from time to time by which the boycott could be made effectual. The making of these allegations necessarily involved the statement of the existence of the committee on proprietary goods to whom this matter was intrusted, and a statement of the various rules created and sought to be enforced before the organization of the plaintiff corporation, but which were brought to bear upon its business for the purpose of boycotting it after the plaintiff had been organized. Ordinarily, to be sure, what was done in these matters before the establishment of the plaintiff would be immaterial, as bearing upon its rights, because wrongs done to the firm of John D. Park & Sons, its predecessors, could not afford a ground of action in favor of the plaintiff. But the relief sought is not only the abrogation of those rules which were made after the plaintiff came into existence, but a restraint in the application of rules which were established for illegal purposes before the plaintiff existed, and which are sought now to be enforced for the purpose of injuring it. For that reason it was just as necessary to allege what was done by way of creating

this boycott before the existence of the plaintiff as afterwards. These considerations enable us to dispose of a large number of the objections taken to the complaint. The complaint contains, however, other allegations which are especially objected to. Those are, in the first place, allegations of what was claimed by the defendants. Ordinarily, of course, allegations of that kind are of no importance; but, where the question is whether certain things which have been done have in view the carrying out of an illegal purpose, we cannot say that it is irrelevant to show what was said by the person accused of the illegal act by way of characterizing the object with which the act was done. At the basis of this cause of action lies the allegation of a conspiracy to boycott the plaintiff's business; and, as a conspiracy may consist either of a combination to do an illegal act or to accomplish a legal act by unlawful means (Oil Co. v. Everest, 30 Hun, 586), some of the acts which are done by the conspirators while legal when standing alone may, if they are joined with unlawful acts, and have in view an unlawful purpose to the injury of the plaintiff, become improper, because they are a part of an illegal scheme. For that reason, we cannot say that in all cases it is improper to set up a claim which was made by a party as to his right to do a certain act which the plaintiff insists is injurious, and his reason for doing it. For the same reason, the acts of the defendants in the proper conduct of their business, and in securing information necessary to its proper management, although standing by themselves they may be perfectly proper and legal, yet, in connection with other acts as aids to an illegal purpose, may be improper, and it may be necessary to allege them. Usually, too, conclusions of law present no issue, and are not proper in a complaint the office of which is simply to present the facts from which the conclusions of law are to be drawn. Yet in an action of this kind, where it is necessary for the plaintiff to show the relations of the different acts to each other, and to the end which is to be sought, we cannot say that an allegation of a conclusion of law is necessarily injurious to the defendants, or that they are aggrieved by it; and for that reason it is not necessary or even proper always to strike out mere conclusions of law.

These considerations require a considerable modification of the order appealed from; but yet, upon an examination of this pleading, we are of the opinion that very many of the allegations contained in it are not proper, even within the liberal rules laid down in this opinion. A careful examination of it shows that many of the paragraphs of the complaint are mere statements of evidence showing the way in which certain things were done; and those paragraphs, clearly, ought not to be permitted to stand in the complaint. Story, Eq. Pl. §§ 28, 252. The plaintiff claims that it is proper to allege facts as they actually took place, and not simply according to their legal effect; and to some extent that is undoubtedly the case, but the allegation of facts as they actually existed does not require or permit a statement in the complaint of the evidence which is relied upon to prove the fact unless the evidence constitutes the fact itself. A large number of the paragraphs of this complaint which contain

merely evidence of the facts should not be permitted, and, so far as the order strikes out these paragraphs, it should be affirmed. So, too, an examination of this pleading shows that many of the paragraphs contain simply repetitions of facts which have already been alleged. Those repetitions are not necessary, and clearly should be stricken out. As a result of the application of these rules, the order appealed from should be modified by permitting the following paragraphs only to stand in the complaint: From paragraphs 1 to 26 inclusive, paragraphs 36, 37, 40 to 57 inclusive, 59, 60, 61, 63, 66 to 73 inclusive, 76 to 81 inclusive, 83 to 100 inclusive, 102–125, 127, 132, 137, 138, 140, 141, 142, 145 to 151 inclusive, 153, 154, 156–158, 160 to 162 inclusive, 165, 169, 171 to 176 inclusive, 178, 185, 189, 190, 193, 196 to 199 inclusive, 202 to 206 inclusive, 208, 209, 211 to 214 inclusive, 216, 218, 219, 227, 230, 233, 240, 242, 244, 246 to 249 inclusive, 251, 253, 287 to 289 inclusive, 318, 325, 329, 333, 355 to 358 inclusive, 372, 376 to 379 inclusive, 383 to 386 inclusive, 397, 398, 399,—and, as so modified, should be affirmed, without costs to either party in this court. We perceive that, as the result of this modification of the complaint, some of the paragraphs contain allegations referring to portions of the complaint that have been stricken out, and therefore are not as intelligible as they should be, and not proper in form; and for that reason it may be that the plaintiff, upon a consideration of the complaint as thus modified, may desire to amend it by serving a new complaint, containing substantially the allegations permitted to remain in this one, and stated in such form as that their connection with each other may more plainly appear. If that is desired, the order may contain a provision that the plaintiff may serve an amended complaint, complying substantially with the rules laid down in this opinion, within 20 days after the service of the order upon it. All concur.

Order modified as directed in opinion, and affirmed as modified, without costs, with leave to plaintiff to amend within 20 days after service of the order.